UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| GLENN D. PANKEY, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> WRIGHT MEDICAL GROUP, INC., a ) <br> corporation, WRIGHT MEDICAL ) <br> TECHNOLOGY, INC., a corporation, and ) <br> WRIGHT MEDICAL EUROPE SA, a ) <br> corporation, ) <br> ) <br> Defendants. ) | Case No. 09-CV-2150 |

## OPINION

This case is before the court for ruling on the Motion to Reconsider Granting of Summary Judgment in Favor of Defendants Pursuant to F.R.C.P 60 (#89) filed by Plaintiff, Glenn D. Pankey. This court has carefully reviewed the arguments of the parties and the documents filed by Plaintiff. Following this careful and thorough review, Plaintiff's Motion to Reconsider (#89) is DENIED.

### BACKGROUND

On February 7, 2012, this court entered an Opinion (#87) and granted summary judgment in favor of Defendants. This court carefully considered the arguments of the parties and the documents provided by the parties. Following this careful and thorough review, this court concluded that: (1) Plaintiff had provided no evidence showing the existence of a manufacturing defect so that Defendants were entitled to summary judgment on that claim; and (2) Defendants were entitled to summary judgment on Plaintiff's design

defect claim because Plaintiff had not provided the court with sufficient evidence from which it could conduct a threshold risk-utility analysis. As far as Plaintiff's design defect claim, this court set out a lengthy analysis of the evidence provided and concluded that "Plaintiff has not adequately shown that the risks of the modular design used in the Profemur® prosthesis outweigh the benefits of the design."

MOTION TO RECONSIDER

On March 1, 2012, Plaintiff filed a Motion to Reconsider Granting of Summary Judgment in Favor of Defendants Pursuant to F.R.C.P 60 (#89), with an attached exhibit. Plaintiff also filed a Memorandum in Support (#90), with attached exhibits, and an additional sealed exhibit (#91). On March 19, 2012, Defendants filed a Brief in Opposition to Plaintiff's Motion for Reconsideration (#92). On March 23, 2012, Plaintiff filed a Request for Oral Argument (#93). This court concludes that Plaintiff's Motion is fully briefed and oral argument is not necessary.

ANALYSIS

STANDARD

Plaintiff brought his Motion to Reconsider pursuant to Rule 60 of the Federal Rules of Civil Procedure. Under Rule 60(b), the district court "may relieve a party . . . from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." Eskridge v. Cook County, 577 F.3d 806, 808 (7th Cir. 2009), quoting Fed. R. Civ. P. 60(b). A district court has discretion to deny relief under Rule 60(b), and a district court's decision

is reviewed under an "extremely deferential" abuse of discretion standard. Eskridge, 577 F.3d at 808-09. "Because relief under Rule 60(b) is 'an extraordinary remedy and is granted only in exceptional circumstances,' a district court abuses its discretion only when 'no reasonable person could agree' with the decision to deny relief." Eskridge, 577 F.3d at 809, quoting McCormick v. City of Chicago, 230 F.3d 319, 327 (7th Cir. 2000). Plaintiff has not explained how he could be entitled to relief under Rule 60(b), and this court concludes that Plaintiff cannot be granted any relief under Rule 60(b).

However, based upon the standard Plaintiff has cited in his Motion, this court concludes that Plaintiff's Motion is, in substance, a Rule 59(e) Motion to alter or amend the summary judgment decision. See Seng-Tiong Ho v. Taflove, 648 F.3d 489, 495 (7th Cir. 2011). Rule 59(e) was amended in 2009 to provide that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). Plaintiff's Motion to Reconsider was filed within the time allowed under Rule 59(e).

In order to prevail on a Rule 59(e) motion, a plaintiff must clearly establish that there has been a manifest error of law or fact, or that newly discovered evidence precludes entry of judgment. Harrington v. City of Chicago, 433 F.3d 542, 546 (7th Cir. 2006); see also Taflove, 648 F.3d at 505. "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000), quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997). Therefore, it is not

enough for a party to take "umbrage with the court's ruling and rehash[] old arguments." Oto, 224 F.3d at 606. This is because a Rule 59(e) motion does not give parties a "second chance" to prevail on the merits. Hutcherson v. Krispy Kreme Doughnut Corp., 803 F. Supp. 2d 952, 956 (S.D. Ind. 2011), citing Fannon v. Guidant Corp., 583 F.3d 995, 1002 (7th Cir. 2009). A judgment shall be altered or amended under Rule 59(e) in the limited circumstances where a court: "(1) patently misunderstood a party[;] or (2) made a decision outside the adversarial issues presented; or (3) made an error not of reasoning but of apprehension." Cnty. Materials Corp. v. Allan Block Corp., 436 F. Supp. 2d 997, 999 (W.D. Wis. 2006), citing Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990); see also Hutcherson, 803 F. Supp. 2d at 956.

## PLAINTIFF'S MOTION

In his Motion, Plaintiff argued that this court patently misunderstood and misconstrued Plaintiff's expert reports and arguments. Plaintiff contended that these patent misunderstandings caused this court to fail to properly consider and weigh the defects in the Profemur® prostheses with the alleged benefits of the Profemur® prostheses. In support of his argument, Plaintiff attached a letter from one of his experts, Carl Alstetter. Plaintiff also argued that Defendants' failure to supplement discovery regarding additional failure reports and subsequent investigations relating to the Profemur® prostheses, as well as information regarding additional claims and lawsuits, meant that this information was not available to Plaintiff or the court at the time the court granted Defendants' Motion for Summary

4

Judgment and "prevented plaintiff's experts from timely supplementing their opinions in this regard."

MISUNDERSTANDINGS

Plaintiff first argued that this court misunderstood the evidence and arguments regarding the availability and feasibility of an alternate design. Plaintiff argued that he presented evidence that the modular design of the prostheses in and of itself made the product unreasonably dangerous and this danger was compounded by the use of titanium alloy rather than a chromium cobalt alloy. Plaintiff argued that Alstetter's opinion stated that the benefits of the modular design were not great enough to overcome its defective modular design and that the percentage of failure, especially in regard to the long neck variety of the prosthesis, was large.

Plaintiff also argued that this court misunderstood the evidence and arguments regarding the cost of the alternate, monolithic design and the cost of using chromium cobalt alloy in place of titanium alloy. In addition, Plaintiff argued that this court misunderstood his evidence and arguments regarding the seriousness of the potential injury caused by the defective design of the Profemur® prosthesis.

As noted, Plaintiff attached Alstetter's letter, dated February 6, 2012, which stated:

> 1. As to manufacturing defects, I stated in my letter of July 27, 2011 that "Accordingly, manufacturing that is not to dimensional specification that results in a larger oval slot and/or

a smaller taper of the distal neck creates another product defect." To clarify: it is my opinion that anything that permits micro-movements between the parts contributes to the problem; a manufacturing flaw exacerbates the defective design and makes the Profemur prosthesis even more unreasonably dangerous. <u>I did not claim that manufacturing defects existed, only that, if present, they would likely make a bad situation worse.</u>

2. As to the availability and feasibility of an alternative to the modular design utilized by Wright Medical in the Profemur prosthesis, I would also like to clarify my opinion. In my July 27, 2011 addendum I noted that I was provided with reports on approximately 184 failures of the modular Profemur prosthesis, and these confirmed that the failure of [Plaintiff's] prosthesis was not unique and that the modular design of the Profemur prosthesis <u>may</u> have contributed to these failures. This problematic design could have been avoided by the use of a monolithic design, a design which is already prevalent in the industry and is part of Wright Medical's prosthesis manufacturing capabilities. Despite the fact the Wright

Medical's expert, Brad James, attempts to defend the modular design in the long neck prosthesis by stating that a modular neck reduces the chance of failure caused by aseptic loosening, the benefit of the modular design in this regard <u>seems</u> to pale in comparison to the dangers inherent in the use of a modular system that leads to early neck failure and the necessity of immediate extraction and replacement of the failed prosthesis. In my August 11, 2011 addendum I noted that 173 of the 184 failures involved a long neck, leading me to conclude that the percentage of failure is large where a long neck is utilized.

3. As to the use of a chromium cobalt alloy as compared to a titanium alloy, the fact that Wright switched to a chromium cobalt neck from a titanium neck in 2009 suggests that the biocompatibility and elasticity closer to that of bone are insufficient benefits if the titanium neck itself lacks the corrosion-fatigue resistance demanded by the design to serve its intended purpose.

In summary, as I stated in my previous letters, it is my opinion to a reasonable degree of engineering and scientific certainty that the failure of the neck of the Profemur prosthesis

in [Plaintiff] was the result of a design defect that rendered the prosthesis unreasonably dangerous and eliminated the prosthetic benefit. (Emphasis added.)

In response to Plaintiff's arguments, Defendants argued that Plaintiff has not provided a valid basis for granting reconsideration. Defendants also argued that, as far as Alstetter's February 6, 2012 letter, the letter was dated a day before this court entered its Opinion (#87) and three months after the Motion for Summary Judgment was fully briefed. Defendants argued that the letter was untimely, not based on new evidence, and, thus, is inapplicable. However, Defendants stated that Alstetter's letter actually reinforces this court's Opinion. This court agrees.

This court agrees with Defendants that, as it relates to the availability of an alternate design consisting of a monolithic prosthesis, Plaintiff has offered nothing new that this court did not consider when it ruled on the Motion for Summary Judgment. Defendants have correctly pointed out that Plaintiff has merely reasserted that the failure rate was "large" but did not and has not offered any evidence to support this conclusory statement. This court notes that Plaintiff has included in his sealed exhibits (#91) a letter from Alstetter, dated August 12, 2011. This court presumes this is the letter Alstetter referred to in his February 6, 2012 letter where he concluded that "the percentage of failure is large where a long neck is utilized." In the August 12, 2011 letter, Alstetter stated that "94 percent of the failures [of the Profemur® prosthesis] were of long necks." The fact that most failures of the Profemur®

prosthesis involved long necks, which this court recognized in its Opinion, does not provide any information regarding how the failure rate of the Profemur® prosthesis compares to the failure rate of the alternate design proposed by Plaintiff, the monolithic design. After carefully considering Plaintiff's arguments, this court concludes that it did not misunderstand Plaintiff's arguments when ruling on the Motion for Summary Judgment. This court stands by its decision that Plaintiff was required to show that the monolithic design did not have dangers of equal or greater magnitude than the Profemur® prosthesis and has not done so.

This court also stands by its decision regarding the use of a cobalt chromium alloy rather than a titanium alloy. Plaintiff has relied, primarily, on the fact that Defendants switched to a cobalt chromium alloy for the neck of the prosthesis in 2009. This does not change this court's conclusion that Plaintiff had not shown that, at the time of manufacture of the prosthesis, the risk of the titanium alloy neck outweighed the benefits of the titanium alloy neck.

In addition, this court concludes that it did not misunderstand the arguments regarding the cost of the alternate designs. The fact remains that Plaintiff provided no evidence regarding the cost of using chromium cobalt alloy as compared to the cost of titanium alloy and also provided no evidence from which to compare the cost of the modular design as opposed to the monolithic design. In his Motion to Reconsider, Plaintiff argued that such evidence was before this court because Defendants have monolithic designs on the market and switched to chromium cobalt in 2009. This court does not agree. As this court noted in

9

its Opinion, Plaintiff's own expert, James Pugh, stated that the "manufacturing of the one piece stem and neck assembly in different lengths and angles of the neck may be more costly than using different necks." This court also agrees with Defendants that Plaintiff has offered no documents, testimony, or statistics to counter the opinion of Defendants' expert, Brad James, that "[o]ver 200 different one-piece implant variations would be required to replace the possible neck-stem combinations that exist because of the modularity of the PROFEMUR® Z-line." Moreover, the evidence that Defendants changed to chromium cobalt in 2009 is not sufficient, by itself, to show that this alternate design was not more costly at the time the prostheses implanted in Plaintiff were manufactured.

This court further concludes that it did not misunderstand the arguments regarding the seriousness of the harm. This court sees no reason to change its conclusion that Plaintiff did not provide any evidence from which this court could analyze the harm caused by a failure of a modular prosthesis in comparison to the harm caused by a failure of a monolithic prosthesis. This court notes that, in response to Defendants' Motion for Summary Judgment, Plaintiff argued that the failure of a modular prosthesis resulted in a difficult procedure requiring the removal of the entire prosthesis, including the femoral component which must be extricated from the femur. In making this argument, Plaintiff relied solely on the information provided by Defendants regarding the failures of the Profemur® prosthesis. This documentation included no information regarding the harm caused by the failure of a monolithic prosthesis. In his Motion to Reconsider, Plaintiff argued that "[f]ailures that do

not involve the fracture of the neck do not require this level of surgical intervention." In support of this argument, Plaintiff relied on the article written by Dangles and Alstetter, which this court reviewed and discussed in its Opinion. The article makes no such statement and, in fact, includes no information regarding the removal of a failed monolithic prosthesis. Plaintiff also referred to the supplemental expert report of James Pugh dated August 31, 2011. This court also reviewed and discussed this report in its Opinion. While this report discusses the process of removing a modular prosthesis due to a neck failure and states that this process creates "compounded morbidities," it does not include any information regarding the process of removing a failed monolithic prosthesis.

Plaintiff has also argued, in a somewhat confusing manner, that this court improperly disregarded the "potential role" of manufacturing defects "in the causation of modular neck fractures." This court agrees with Defendants that it appears that Plaintiff's argument is that, because manufacturing defects are possible, then the design is defective. Defendants contended that this argument is "nonsensical." This court does not have to go that far because it is clear that Plaintiff's argument has no evidentiary support. This court's conclusion in its Opinion that Plaintiff provided no evidence showing the existence of a manufacturing defect is, in fact, bolstered by Alstetter's February 6, 2012 letter. Alstetter stated, "I did not claim that manufacturing defects existed, only that, <u>if present</u>, they would likely make a bad situation worse (emphasis added)." That is a big "if" and confirms that Plaintiff has not provided evidence which supports the existence of a manufacturing defect.

## FAILURE TO SUPPLEMENT DISCOVERY

Plaintiff has also argued that Defendants did not comply with Rule 26(e) of the Federal Rules of Civil Procedure which required them to supplement discovery in regard to failure reports and subsequent investigations relating to the Profemur® prostheses. Plaintiff argued:

> This information was thus not available to the Court when it reached its decision to grant Summary Judgment in favor of the defendants in the case at bar. The failure of the defendants to timely supplement discovery as discussed above has prevented plaintiff's experts from timely supplementing their opinions in this regard. Due to the failure to supplement discovery, the defendant . . . cannot be entitled to Summary Judgment and should be prohibited from offering testimony, expert or otherwise, that the Profemur prostheses were not unreasonably dangerous as designed.

Plaintiff has cited no authority for this argument.

In their Brief in Opposition, Defendants argued that the argument is incomprehensible, its relevance is unclear, and the conclusory argument does not support reconsideration. This court agrees.

Plaintiff appears to want this court to assume that Defendants have not provided

information that would preclude the entry of summary judgment in their favor. There is no basis for this court to make such a speculative assumption. If Plaintiff believed Defendants had not provided information they were required to provide under Rule 26(e), Plaintiff should have filed a Motion to Compel. In addition, if Plaintiff believed this information was necessary to justify his opposition to the Motion for Summary Judgment, Plaintiff should have asked for additional time to obtain the information and respond to the Motion for Summary Judgment under Rule 56(d) of the Federal Rules of Civil Procedure. Because Plaintiff did not take either step, this court cannot make a speculative assumption that any such information exists. Plaintiff's argument clearly does not provide a basis for this court to reconsider its Opinion granting summary judgment in favor of Defendants.

IT IS THEREFORE ORDERED THAT Plaintiff's Motion to Reconsider Granting of Summary Judgment in Favor of Defendants Pursuant to F.R.C.P. 60 (#89) is DENIED.

ENTERED this 27th day of March, 2012

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE